IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **CONNIE WILLIAMS** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | **1:12-cv-03869-SLB** |
| **GENERAL ELECTRIC,** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO STAY THIS ACTION
AND TO COMPEL ARBITRATION**

COMES NOW, Defendant, General Electric Company ("GE"), by and through its undersigned counsel, and submits this brief in support of its Motion to Dismiss, or in the Alternative, to Stay this Action and to Compel Arbitration.

**I.    INTRODUCTION AND STATEMENT OF FACTS**

In December 2009, GE developed and implemented an internal dispute resolution process called SOLUTIONS. (Declaration of David Royer, Exhibit A, ¶5). The purpose of SOLUTIONS was to allow its employees to handle disputes at the local level and allow for a faster resolution to employment issues. (Id.; SOLUTIONS Handbook, Exhibit B). SOLUTIONS provides four different levels of resolution, allowing the respective parties to move to the next level if the matter is not settled at a lower level. (Ex. B; SOLUTIONS Overview, Exhibit C).  The

1

final level in the process requires binding arbitration of the employment issue in dispute. (Id.)

To engage the SOLUTIONS process, an employee must fill out a SOLUTIONS Issue Resolution Procedure form for each step in the process. (Ex. B). Step One involves discussion between an employee and his direct manager and/or Human Resources representative to attempt resolution of the problem at this level of management. (Id.) If the problem is not resolved at Step One, Step Two involves presenting the concern to higher level management and/or Human Resources. If the claim is a "Covered Claim" (meaning a claim where a court would otherwise have the authority to hear the claim under federal or state law), then the claim proceeds, if necessary, to Step Three mediation, and if the issue is not resolved at this level, Step Four is arbitration. (Id.)

In November 2009, the SOLUTIONS program was first introduced to employees through the Decatur plant newsletter. (Ex. A, ¶6). Employees received hard copies of this newsletter, and it was also made available on a special website solely for GE's Decatur, Alabama plant. (Id.) Every Decatur employee had access to this site at computer stations placed throughout the plant. These computer locations included: the floor, the cafeteria, each department, and the learning center. (Id.) Later, around April 2010, the Business Team Leaders at the Decatur site asked each employee to sign an Acknowledgment that they had received an

overview of SOLUTIONS and that they were informed as to where further SOLUTIONS information could be accessed. (Id.; Ex. C). Plaintiff received the SOLUTIONS overview and signed the SOLUTIONS Program Acknowledgment. (SOLUTIONS Program Acknowledgment, Exhibit D). The acknowledgment form stated:

> Signing this form indicates that you have received an overview of SOLUTIONS and that you have been informed as to where you can access SOLUTIONS information later.

(Ex. D). By continuing her employment with GE, Plaintiff agreed to be bound by the SOLUTIONS program. (Ex. A, ¶8).

The SOLUTIONS program provides that a covered employee, meaning either an hourly or salaried employee at the Decatur site, is not allowed to litigate a covered claim in any court, and that all covered claims must be brought through the SOLUTIONS process. (Ex. B). Covered claims include, but are not limited to:

1. <u>Employment discrimination</u> and harassment claims, based on, for example, age, <u>race</u>, sex, religion, national origin, veteran status, citizenship, <u>handicap/disability</u>, or other characteristic protected by law;

2. <u>Retaliation claims</u> for legally protected activity, and/or for whistleblowing.

(Ex. B)(emphasis added).

GE hired Plaintiff in January 1995.  (Ex. A, ¶3).  In 2011 she worked in the position of Processor I, working general assembly in the Decatur plant.  (Id.)  On July 15, 2011, at 1:33 p.m., Plaintiff left a voice message on Business Team Leader Kathy Wright's phone.  (Connie Williams, Letter Number One Write-Up, Exhibit E).  In this message Williams stated that she would not be coming into work that day due to a short term disability claim.  (Id.)  This message was late as her shift began at 6:15 a.m.  (Id.)  Plaintiff then submitted a letter of complaint to the Human Resources Department on July 20, 2011, claiming that Kathy Wright harassed her, and that she (Plaintiff) followed proper short-term disability protocol.  (Plaintiff's Complaint to Human Resources, Exhibit F).  During this time Plaintiff did not seek resolution of this claim through SOLUTIONS, and did not fill out an Issue Resolution Procedure form.  (Ex. A, ¶¶10).

On August 31, 2011, Plaintiff filed a Charge with the EEOC alleging race and disability discrimination.  (See attachments to Complaint).  On August 24, 2012, Plaintiff filed an amended EEOC Charge against GE alleging retaliation.  (Mike Searcy Declaration, Exhibit G, ¶4; 8/24/12 EEOC Charge, Exhibit H).  On November 14, 2012, Plaintiff filed this suit in the Northern District of Alabama.  (See Complaint; Ex. G, ¶5).  To date, Plaintiff is still employed with GE.  (Ex. G, ¶8).

Plaintiff never engaged in the SOLUTIONS process, either before or after

4

filing her Complaint with this Court despite the fact that she is required to do so. (Ex. A, ¶¶10, 12; Ex. C; Ex. G, ¶¶6, 7). The SOLUTIONS policy specifically states that the SOLUTIONS process is not intended to discourage the filing of charges with a government agency, but that "either party may request that an administrative agency or authority . . . defer processing that claim or charge pending exhaustion of the Solutions process." (Ex. B). The policy further states that "[c]overed Employees and the Company are not allowed to litigate a Covered Claim in any court . . . All covered claims must be brought on an individual basis only in Solutions." (Ex. B).

Based on the case law explained below and the components of the SOLUTIONS program, Plaintiff's claims of retaliation, race and disability discrimination fall within the definition of "covered claims" under the SOLUTIONS program, and must be submitted to arbitration. <u>Importantly, at this time, GE is willing to waive steps one and two and begin the SOLUTIONS process at step three - mediation.</u>

## II.   ARGUMENT

The courts are unanimous in holding that an employer may condition employment upon an employee's agreement to submit his employment-related claims to arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that an arbitration clause contained in a contract involving interstate

5

commerce must be enforced. Thus, an agreement between an employee and an employer/manufacturer which sells its products to customers throughout the United States and abroad falls within the definition of "commerce" as defined by the FAA 9 U.S.C. §1. Therefore, Plaintiff's employment disputes fall under the mandate of the FAA. As explained below, the components of GE's SOLUTIONS program are fair and reasonable. Further, by continuing her employment with GE after learning of the requirements of the SOLUTIONS program, Plaintiff has agreed to arbitrate any covered employment disputes. Plaintiff must be required to submit her claims to GE's SOLUTIONS process.

> **A. Plaintiff's claims are due to be submitted to arbitration under the contractual agreement to arbitrate and the Federal Arbitration Act.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., makes enforceable a private agreement to submit disputes to arbitration, and requires courts to enforce arbitration agreements in the same manner as it enforces all contracts. Volt Info. v. Bd. of Trustees, 489 U.S. 468, 474 (1989). The United States Supreme Court has specifically held that the FAA may be used to enforce arbitration agreements between employers and employees. See Circuit City v. Adams, 532 U.S. 105 (2001). As the Court explained:

> [F]or parties to employment contracts . . . there are real benefits to the enforcement of arbitration provisions. We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context.

6

> Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation.

Id. at 122-23 (internal citations omitted). The Eleventh Circuit has also accepted that an employer may condition employment upon compulsory arbitration. See Weeks v. Harden Mfg. Corp., 291 F. 3d 1307, 1315 (11th Cir. 2002). Federal policy, therefore, favors the enforcement of valid arbitration agreements, particularly in disputes arising in the employment context.

Plaintiff's agreement to submit to the SOLUTIONS process was reduced to writing that Plaintiff accepted. The terms of SOLUTIONS, specifically as they relate to mediation and arbitration, are fair and reasonable. The SOLUTIONS program also falls within the scope of Congress' Commerce Clause power. GE regularly engages in interstate commerce. The items produced in GE's Decatur plant are shipped throughout the United States and abroad, including: New York, Illinois, Florida, and South America. (Ex. A, ¶4). Additionally, the SOLUTIONS process states that "the parties acknowledge that the Company is engaged in transactions involving interstate commerce." (Ex. B). The SOLUTIONS process, and thereby the agreement to submit to arbitration, therefore, satisfy the Commerce Clause. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-77 (1995) (interpreting FAA and U.S. CONST. Art. I § 8 and concluding that the FAA's language "signals an intent to exercise Congress' commerce power to the full").

The dispute at the heart of this case arises from Plaintiff's employment. (See Complaint.) The SOLUTIONS handbook provides a clear description of the claims that are covered, and Plaintiff's claims in this case fall within that description. (Ex. B); see also Brown v. ITT Consumer Fin. Corp., 211 F. 3d 1217,1221-22 (11th Cir. 2000) (compelling arbitration of statutory claims where agreement stated that it covered "any dispute between them or claim by either against the other"); Bender v. A.G. Edwards & Sons, Inc., 971 F. 2d 698, 700 (11th Cir. 1992) (compelling arbitration where agreement provided that arbitration would be proper for "any dispute, claim or controversy that may arise between me and my firm . . .").

Upon finding that a claim is subject to an arbitration agreement, the Court should order that the action be stayed pending arbitration. 9 U.S.C. § 3; see also Bender, 971 F. 2d at 699. If the parties do not proceed to arbitration, the Court may compel arbitration. 9 U.S.C. § 4. Where, as here, all of the issues raised in the Complaint should be submitted to arbitration, courts have held that dismissal of the action is appropriate. See Alford v. Dean Witter Reynolds, Inc., 975 F. 2d 1161, 1164 (5th Cir. 1992) (and cases cited therein); Clayton v. Woodmen of the World Life Ins. Co., 981 F. Supp. 1447, 1451 (M.D. Ala. 1997) (granting motion to compel arbitration and dismissing case with prejudice). GE's Motion to Compel arbitration is, therefore, due to be granted.

### B. Plaintiff Agreed to Arbitration By Continuing Her Employment with GE

The SOLUTIONS form signed by Plaintiff, as well as the handbook, clearly notified her that she would be subject to arbitration by continuing her employment. (Ex. B; Ex. C; Ex. D). If Plaintiff did not want to agree to GE's SOLUTIONS program, she was free to reject the agreement by terminating her employment with GE. (Ex. A, ¶8). Plaintiff's continued employment with GE to present, is proof that Plaintiff did not do so. (Ex. G, ¶8). Plaintiff agreed to submit her employment-related claims to all levels of the SOLUTIONS program, including mediation and arbitration, and thus, she must be compelled to engage in the SOLUTIONS process. Bender, 971 F.2d at 700-01. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." American Express Financial Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997)(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The Alabama Supreme Court has recognized the validity of agreements where an employee's acceptance is predicated solely on the employee's continuation of his employment. In Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 733-34 (Ala. 1987), the Alabama Supreme Court specifically held:

> We see no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is

> not required to do so. Such a performance clearly provides any consideration necessary to the contract. The fact that the promise is communicated to the employee through the medium of a handbook, rather than by some other means, is simply of no consequence.

Hoffman-La Roche, Inc., 512 So. 2d at 733-34. The Court also emphasized that "it does not matter whether the offer is made at the time of original hiring or after the employee has been hired [because] consideration is supplied by the employee's performance, in either context, when he is not required to perform." Id., at 734 n.3.

The Alabama Supreme Court further issued a stronger opinion regarding the validity of an arbitration agreement implemented during an individual's employment. In Baptist Health System, Inc. v. Lisa Mack, 860 So. 2d 1265 (Ala. 2003), the defendant appealed the trial court's holding that the acknowledgment form, signed by the plaintiff, pertaining to a newly implemented arbitration program, did not establish an agreement to arbitrate. Like the present case, defendant BHS implemented an alternative dispute resolution program (the "Program") during plaintiff's employment. Id., at 1267. The Program procedures were set forth in a document separate from the employee handbook and plaintiff signed a document entitled "Acknowledgment of Receipt of BHS Dispute Resolution Program." Id. at 1268-69. The acknowledgment form read:

> I acknowledge receipt of the BHS Dispute Resolution Program document. I understand I am obligated to read this document as it governs my continued employment and all future legal disputes

10

> between me and Baptist Health System as defined in the document. I understand that it is my responsibility to consult my Human Resource director if I have any questions.

Id., at 1268. On appeal, the plaintiff contended that because the acknowledgment form did not contain an arbitration provision, she was not bound to arbitrate her claims. The Alabama Supreme Court disagreed, holding, "we conclude that Mack, by continuing her employment with BHS subsequent to her receipt of the Program document, expressly assented to the terms of the Program document and is therefore bound by the arbitration provision contained in the document." Id., at 1274-75. The court issued two rulings: (1) a signed acknowledgment form related to the issue of arbitration is enough to create an arbitration agreement; and (2) continued employment denotes an employee's consent to arbitration.

There is no issue as to whether Plaintiff's written assent to the SOLUTIONS process, as well as her continued employment after the implementation of the SOLUTIONS program denoted her consent to the program and possible arbitration of any employment disputes. With knowledge that her employment would be governed by GE's SOLUTIONS program, Plaintiff continued her employment with GE and thereby agreed to be bound by the rules of the SOLUTIONS program.

### C. The Terms of the SOLUTIONS Program Are Reasonable and Fair

The Eleventh Circuit has held that to compel arbitration of statutory claims, the agreement at issue must meet certain requirements to ensure that the terms of

11

the arbitration agreement comport with the purposes behind the statute:

> To fall within the [FAA's] ambit . . . an arbitration agreement that purports to cover statutory claims must contain terms that generally and fairly inform the signatories that it covers statutory claims. The arbitration agreement's terms regarding remedies must be fully consistent with the purposes underlying any statutory claims subject to arbitration.

Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1059 (11th Cir. 1998)(citing Gilmer v. Interstate/Johnson Lane, Corp., 500 U.S. 20 at 26 (U.S.N.C. 1991)).

GE's SOLUTIONS program meets these requirements. The agreement provides a clear description of the claims that are covered, and Plaintiff's race, disability and retaliation claims in this case come within the definition of "covered claims" under the program. (Ex. B). The SOLUTIONS program applies, on its face, to "employment discrimination . . . claims, based on . . . race . . . [and] handicap/disability," as well as "retaliation claims for legally protected activity." (Ex. B). GE's description of the claims that are covered under the agreement is far more detailed than is required by the Eleventh Circuit. See Brown, 211 F.3d at 1221-22 (compelling arbitration of statutory claims where agreement stated that it covered "any dispute between them or claim by either against the other"); Bender, 971 F.2d at 700 (compelling arbitration where agreement provided that arbitration would be proper for "any dispute, claim or controversy that may arise between me and my firm . . .")

12

Furthermore, each level of the SOLUTIONS program is described in detail explaining who participates in each step of the process, the time limitations of each step, the forms utilized in each step, and even a flow chart for each step in the SOLUTIONS process. (Ex. B; Ex. C). Of course, in this case, because GE has agreed to waive steps 1 and 2, the parties need only focus on step three - mediation, and step four - arbitration.

The mediation step allows for representation by counsel. All administrative costs, including the costs of the mediator, are borne by GE, without any financial contributions from the employee.[1] (Ex. B; Ex. C). Selection of a mediator is made with the involvement of both parties. (Ex. B). Further, if the dispute is resolved at mediation, GE will pay up to $2,500 for experts or attorneys' fees incurred during the mediation. (Id.)

The same liberal guidelines are applicable to the arbitration process. Again, both parties will be involved in the selection of an arbitrator. (Ex. B). GE will be responsible for all administrative fees associated with the arbitration, including payment for the arbitrator.[2] Both parties have the opportunity to be represented by an attorney, and follow general arbitration procedures (allowing for discovery, opening and closing remarks, direct and cross examinations, etc.). (Id.) The arbitrator's award rendered through SOLUTIONS shall be "a final, binding, and

---

[1] Plaintiff is expected to pay the cost of her own attorney's fees should she choose to have counsel present. (Ex. B). Employees are also paid by GE for the employee's necessary time spent at mediation. (Id.)
[2] Employees are also paid for the necessary time spent at the arbitration. (Id.).

exclusive determination of Covered Claims." (Id.)

GE's arbitration program is fair and reasonable in its terms, and thereby complies with the Eleventh Circuit's requirement that the remedies be consistent with the purposes of the anti-discrimination statutes.  See Gilmer, 500 U.S. at 28-32 (rejecting "a host of challenges to the adequacy of arbitration procedures").  It cannot be said that the terms are unreasonably favorable to GE or that the terms are oppressive or unfair.  See Potts v. Baptist Health System, Inc., 853 So.2d 194 (Ala. 2002)(rejecting inequality arguments to arbitration agreement where agreement was equally binding on the parties, did not limit the arbitrator's ability to provide remedies or damages, allowed the employee to be represented at arbitration hearing, provided for discovery, provided for only a $50 filing fee).  Therefore, GE's Motion to Compel Arbitration is due to be granted.

**D.     This Action Should Be Stayed And/Or Dismissed Pending Arbitration**

Upon finding that a claim is subject to an arbitration agreement, the Court should order that the action be dismissed to allow for mediation and arbitration. Where, as here, all of the issues raised in a Complaint must be submitted to arbitration, courts have held that dismissal of the action is appropriate.  See Alford, 975 F.2d at 1164 (and cases cited therein); Clayton, 981 F.Supp. 1447 (granting motion to compel arbitration and dismissing case with prejudice).

In the alternative, the Court may stay the action pending arbitration. 9 U.S.C. § 3. Finally, if the parties do not timely proceed to arbitration, the Court may compel arbitration. 9 U.S.C. § 4.

## III. CONCLUSION

For the foregoing reasons, GE requests that this Court Enter an Order directing Plaintiff to submit her claims to the SOLUTIONS process, whereby Plaintiff is required to engage in mediation and, if necessary, subsequent arbitration. GE requests that this Court Dismiss this action or, the alternative, stay this action while the arbitration proceeds.

Respectfully submitted this 19th day of February, 2013.

s/James C. Pennington
James C. Pennington –ASB 1287 N62J
Shannon C. O'Guin – ASB 4803 N49O
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
420 20th Street North
Suite 1900
Birmingham, Alabama  35203
Telephone:  (205) 328-1900
Facsimile: (205) 328-6000
E-mail: james.pennington@odnss.com
E-mail: shannon.oguin@odnss.com

*Attorneys for Defendant,
General Electric Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, as well as via certified mail, which will send notification of such filing to:

Connie Williams
3906 Boxwood Lane, SW
Decatur, AL 35603

                                       s/James C. Pennington
                                       OF COUNSEL